No. 80-341

IN THE SUPREME COURT OF THE STATE OF MONTANA

1981

---

IN RE:  PETITION TO ADOPT RULE REGARDING
ATTORNEY'S FEES, COSTS & INVESTIGATION
EXPENSES OF PRIVATE ATTORNEYS APPOINTED
TO DEFEND INDIGENT DEFENDANTS et al.,

---

ORIGINAL PROCEEDING:

Counsel of Record:

For Appellant:

> D. Patrick McKittrick argued, Great Falls, Montana
> Rockwood Brown argued, Billings, Montana
> Mike Stephens argued, Montana Association of County Attorneys,
>  Helena, Montana
> Joseph Wolff argued, Butte, Montana
> R. D. Corette, Jr., Butte, Montana
> Michael J. Hughes, Helena, Montana
> William E. Astle, Kalispell, Montana
> John H. Kuenning, Great Falls, Montana
> W. William Leaphart, Helena, Montana
> Willis B. Jones, Billings, Montana
> Russell K. Fillner, Billings, Montana
> James T. Harrison, Jr., Helena, Montana

---

Submitted:  December 3, 1980

Decided:  SEP 2 9 1981

Filed:  SEP 2 9 1981

_Thomas J. Kearney_
Clerk

Mr. Justice John C. Sheehy delivered the Opinion of the Court.

This is an original proceeding arising out of a petition filed in this Court by the judiciary committee of the State Bar of Montana requesting that we adopt a rule regarding a minimum schedule for attorneys fees, costs and investigation expenses of private attorneys appointed to defend indigent defendants in criminal and juvenile cases.

The judiciary committee submitted a proposed rule with the petition, and requested us to set the matter for hearing. We did cause a public hearing on the petition to be held on December 3, 1980 and invited participation by the public. We published notice to the bar through The Montana Lawyer, the publication promulgated by the State Bar of Montana.

Responses or appearances were filed or made by Willis B. Jones and Russell K. Fillner, individually, of Billings, Montana, and James T. Harrison, Jr., of Helena, Montana. Written response was received from Daniel Donovan, a public defender in Great Falls, Montana. Appearances and written responses were received from Michael Stephen, executive director of the Montana Association of Counties and from Joseph G. Wolf, budget director, Butte-Silver Bow.

The judiciary committee, acting on behalf of the Board of Trustees of the State Bar of Montana, requested that the Montana Supreme Court establish hourly rates, maximum totals, and investigative fees for court-appointed private counsel (not including public defenders) where indigent defendants are involved. The suggested hourly rates were $45 for pretrial and post-trial appearances and actual trial time in court, $25 per hour for travel, and $40 per hour for all other legal work. The suggested maximum totals included $7,500 for

-2-

felonies, where the possible penalty is death, life imprison-
ment, or imprisonment for more than 50 years; felonies with
lesser punishments, $5,000; in juvenile cases, a maximum of
$2,000 per trial court proceedings; and for misdemeanors and
petty offenses, a maximum of $1,000 for trial court proceedings.
If such cases did not go to actual trial, the maximums would
be one-half of the suggested amounts for full trial. A total
sum for appellate proceedings, regardless of the type of
crime involved was suggested at $2,000.

The petition also suggests that investigative, expert,
or other services necessary for adequate defense for an
indigent client should be allowed, not to exceed $600,
exclusive of reimbursement for other expenses reasonably
incurred.

In his written statement, Russell K. Fillner suggests
$45 for pretrial and post-trial appearances and $50 for actual
trial time. He objects to maximums because they may not
square with a defendant's constitutional right to effective
counsel. He suggests that the $600 limitation for investigative
and expert work is unrealistic.

Daniel Donovan in his written response, contends that
$50 is proper as an hourly amount to be paid for all legal
work performed by a court-appointed attorney, and again, he
also objects to the maximums as being unrealistically low.

The attorneys who appeared at the oral hearing were
generally in favor of the judiciary committee petition though
all suggest that the amounts requested are probably low.

Opposition, or perhaps restraint, was proposed or
suggested by Mr. Stephen and Mr. Wolf. Mr. Stephen pointed
out the different circumstances that prevail in Montana's
56 counties and the differing situations for taxpayers in

-3-

counties where there are substantial amounts of federal lands or Indian reservations which do not produce a tax base. (Mr. Stephen contends that the in-lieu payments received from the federal government are not sufficient to make up the difference.) Mr. Wolf expressed opposition to any rule promulgated by this Court upon the ground that the matter of fees in criminal cases should be left to the discretion of the local district judge. The attorney general, Mike Greely, suggested through his deputy, Jerome J. Cate, that such a statewide rule might have anti-trust implications.

We have carefully studied the judiciary committee petition, and the various responses that have been made to that petition, orally and in writing. We have tried to assess the ramifications of any statewide rule that we might promulgate, but we find such different circumstances from county to county, even within the same districts, that we conclude that a just application of a statewide rule is hardly feasible.

The greatest problem we find with the promulgation of a statewide fee schedule is the certain impact it would have on the county-funded budgets of the district courts. The 1979 legislature, in Ch. 692, Laws of 1979, limited property taxes collected in each county for all district court costs (except for judicial salaries and travel expenses) to 6 mills for first and second class counties, 5 mills for third and fourth class counties, and 4 mills for all other counties. Ch. 405, Laws of 1979, requires county-funded district court programs to be subjected to the county budgeting process, and Ch. 275, Laws of 1979 limits district court judges, in making expenditures or incurring liabilities, to the amount of the county-detailed budgetary appropriations and classifications. As long as those statutes are on the books, and not vacated,

repealed or modified by a subsequent legislature or by order of a court of competent jurisdiction, their strictures apply to the district courts. We will not adopt a minimum fee schedule and put the district courts in the possible predicament, though the predicament may not be intended by us, of following our order or breaking the budgetary laws.

The second problem that we face in considering a state-wide fee schedule is the disparity that exists in the costs of doing business borne by the legal profession between districts with large populations and those areas of smaller population. The attendant expenses of paying rent for professional offices, purchasing and housing a workable law library, and employing competent clerical and stenographic help vary greatly from area to area; yet such expenses undoubtedly enter into a proper calculation as to what a private attorney should receive for his services. A statewide figure would probably be a boon to some and a bane to others.

A third variable is the competence of some attorneys for criminal work as compared to others. Experience, learning and talent are undoubtedly among the factors that a district court may wish to consider in appointing private attorneys to defend indigent persons. The district courts should be free, within their budgetary limitations, to contract for the best possible available defense counsel. This is especially true if the crimes charged have a great public significance or gravity.

In State v. Allies (1979), ___ Mont. ___, 597 P.2d 64, 66, 36 St.Rep. 820, 823, because of the plethora of cases coming to this Court involving disputed attorneys fees and costs for court-appointed counsel, we set a maximum guideline

of $30 per hour for legal work, subject to a total maximum
of $5,000 in any criminal proceeding without prior court
approval, and we approved a $2,000 fee for the services
performed on appeal in that case. In State v. McKenzie
(1979), ___ Mont. ____, 608 P.2d 425, 36 St.Rep. 2157, we
approved and awarded $3,000 to attorneys representing the
defendant on one issue in the appellate process. Each of
those cases involved open-end contracts; that is, no upper
limit on the amounts to be paid the attorneys was discussed
or agreed to when the attorneys were first appointed. Thus,
the attorneys on their part, in good faith, expended their
hours on behalf of the respective defendants, trusting that
they would be paid on the agreed schedule; whereas the
district courts, on their part, being busy and having no
direct knowledge of the amount of work being done, unexpectedly
found themselves facing extraordinary claims for attorneys
costs. These were the considerations that led this Court in
Allies to set forth the upper limits of $5,000 in district
court work and $2,000 for appellate work. Of course, each
of these limits was subject to the further order of the
district court in justifiable cases.

A fourth reason for our conclusion in this case is
found in section 46-8-201, MCA, which provides:

> "Remuneration of appointed counsel. (1)
> Whenever in a criminal proceeding an attorney
> represents or defends any person by order of
> the court on the ground that the person is
> financially unable to employ counsel, the attorney
> shall be paid for his services such sum as a
> district court or justice of the state supreme
> court certifies to be a reasonable compensation
> therefor and shall be reimbursed for reasonable
> costs incurred in the criminal proceedings."
> (Emphasis added.)

The intent of the statute is clear: where county funds are
concerned, a district court should certify as to the propriety

-6-

of the bill; where state funds are concerned, a justice of the state supreme court should so certify. The promulgation by us of a statewide fee schedule would take from the district courts a discretionary duty to determine the propriety of the bill for legal services presented against the county funds, and make the district courts' certificate ministerial rather than discretionary. We find the legislature intended to vest a wide latitude of discretion in the district court in the matter of fees, so it could take into consideration the factors involved.

In _Allies_, 597 P.2d at 65-66, we quoted from State v. Lehirondelle (1976), 15 Wash.App. 502, 550 P.2d 33, 34-35, to the following effect:

> "Elements of consideration in fixing fees
> include the amount of time and effort expended,
> the nature and extent of the services rendered,
> the fees paid for similar service in other
> jurisdictions, the traditional responsibilities
> of the legal profession, the amount of public
> funds made available for such purposes, and a
> judicious respect for the taxpaying public as
> well as the needs of the accused.  (Citing cases.)"

We therefore conclude it proper and statutorily required to leave to the district courts the choice of counsel for the particular crime charged against indigent defendants, and the rate of pay such court-appointed counsel may receive for their efforts. We remove the $30 per hour maximum rate that we fixed in _Allies_, supra, and we leave to the discretion of district judges the fixing of a maximum hourly rate to apply in each district. We keep in effect the upper total limit of $5,000 for any given criminal proceeding without prior court approval, and the total figure of $2,000 for appeal purposes where the same are to be paid from county funds. These total limits may be increased by the district

-7-

courts in justifiable cases. We caution the members of the bar and the district courts to see to it that in each case of appointment of private counsel at the outset of the appointment, there be placed upon the minutes or other records of the district court the rate of pay and upper limits to be received by court-appointed private counsel for services, in addition to reasonable expenses, and that any subsequent modifications or amendments to that contract be also entered on the same records of the court. A district court rule adopted for each county in each district, setting out rates, would comply with this requirement.

This opinion shall be and does constitute a judgment, to be binding upon members of the bar and district courts from and after the promulgation of this opinion, and applying to criminal cases and juvenile proceedings from and after the date of promulgation hereof. Copies of this opinion shall be mailed by the Clerk of this Court, to counsel of record, to the parties making appearance herein not otherwise represented, and to each district judge and county attorney in the State of Montana. The further relief requested by petitioner, the judiciary committee of the State Bar of Montana, is denied. No costs to any party.

_____
John C. Sheehy
Justice

We Concur:

_____
Frank I. Haswell
Chief Justice

_____
Gene B. Daly

_____
John Conway Harrison

_____
Justices

_____

This cause deemed submitted prior to January 5, 1981.

-8-